## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| Grant Liverett, | ) | |
| | ) | |
| Plaintiff, | ) | C/A No.: 2:12-cv-1285-PMD |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Island Breeze International, Inc. | ) | |
| Bradley T. Prader, and Michael | ) | |
| Hovdestad, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court upon Defendants Island Breeze International, Inc. ("IBI"),
Bradley T. Prader ("Prader"), and Michael Hovdestad's ("Hovdestad") Motion to Dismiss Prader
and Hovdestad for Lack of Personal Jurisdiction under Federal Rule of Civil Procedure 12(b)(2),
Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a), and Motion to Dismiss for Failure to
State a Claim under Federal Rule of Civil Procedure 12(b)(6).

For the reasons that follow, the Court denies the Motion to Dismiss Prader and
Hovdestad for Lack of Personal Jurisdiction, denies the Motion to Transfer Venue, grants in part
and denies in part the Motion to Dismiss for Failure to State a Claim, and grants Plaintiff's
request for leave to amend.

### BACKGROUND

Plaintiff alleges the following relevant facts. IBI is incorporated in Delaware, with its
principal place of business in New Jersey. IBI is in the business of entertainment cruising. Both
Prader and Hovdestad are residents of New Jersey, where they are employed by IBI—Prader as

1

Chief Executive Officer and Hovdestad as Chief Legal Counsel. While IBI was evaluating possible port locations for an IBI ship, Prader learned of a potential opportunity in North Charleston, South Carolina. At some point Prader was introduced to Liverett. Prader and Liverett continued communications over the following months. According to Plaintiff, IBI entered into a "Consultation Agreement" with Plaintiff. This agreement was never put in writing, but in exchange for his acting as a consultant in indentifying $12.5 million of needed financing for IBI, IBI would agree to pay him 5% of the funding raised and 10% of the stock in a company that would be formed by IBI to operate the business.

IBI obtained a $3.3 million loan from Platinum Partner Value Arbitrage, L. P. to serve as bridge financing until the closing of the full financing loan. IBI eventually entered into an agreement with Malom Group AG for $12.5 million to be provided by Malom to IBI for funding the project.

Plaintiff alleges that IBI through Prader and Hovdestad entered into a Consultation Agreement with him to compensate him for contributions to IBI's attempts to secure financing. Plaintiff asserts that the agreement was discussed on several occasions and that he is due money under the agreement. Further, Plaintiff alleges that both individual defendants traveled to Charleston and that during a dinner meeting in Charleston, they discussed the terms of this agreement.

Plaintiff commenced this action against Defendants in the Court of Common Pleas for Charleston County. On May 16, 2012, Defendants removed this action to the U.S. District Court. The Complaint states seven causes of action. The first cause of action (Breach of Contract and Breach of Contract Accompanied by a Fraudulent Act) asserts that IBI breached the

Consultation Agreement by failing to pay Plaintiff for his services. The second cause of action (Quantum Meruit) alleges that IBI must pay Plaintiff for his services because the service conferred a benefit upon IBI, IBI accepted the services, and Plaintiff provided the services under circumstances that notified IBI that he expected to be paid in return for his services. The third, fourth, and fifth causes of action (Fraud/Misrepresentation, Constructive Fraud, and Negligent Misrepresentation) all allege that all of the Defendants represented to Plaintiff that he would be paid 5% of the funding raised and 10% of the stock in a company that would be formed by IBI to operate the business and that Defendants had no intention of honoring that agreement. The sixth cause of action (Defamation) alleges that Defendants told a representative of the Malom Group that Plaintiff would try to extort an improper advantage in business transactions and that this statement was defamatory. The seventh cause of action (Civil Conspiracy) alleges that Prader, Hovdestad, and IBI joined together in a scheme to mislead Plaintiff to take the benefits of his labor without compensating him and to harm his reputation in the business community.

## ANALYSIS

### I. Personal Jurisdiction

When personal jurisdiction is challenged by the defendant, the plaintiff has the burden of showing that jurisdiction exists. *See In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). When a court addresses the issue of jurisdiction on the basis of pleadings and supporting legal memoranda without an evidentiary hearing, "the burden on the plaintiff is simply to make a prima facie showing of a jurisdictional basis in order to survive the jurisdictional challenge." *Combs v. Bakker*, 886 F.2d 673, 675 (4th Cir. 1989). In deciding such a motion, "the court must

3

construe all relevant pleading allegations in the light most favorable to the plaintiff, assume

credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id*. at 676.

To validly assert personal jurisdiction over a non-resident defendant, two conditions must

be satisfied. *Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215

(4th Cir. 2001). First, the exercise of jurisdiction must be authorized by the long-arm statute of

the forum state, and second, the exercise of personal jurisdiction must not "overstep the bounds"

of Fourteenth Amendment due process. *Anita's New Mexico Style Mexican Food, Inc. v. Anita's*

*Mexican Foods Corp.*, 201 F.3d 314, 317 (4th Cir. 2000). South Carolina's long-arm statute has

been construed to extend to the outer limits allowed by the Due Process Clause.[1] *Foster v.*

*Arletty 3 Sarl*, 278 F.3d 409, 414 (4th Cir. 2002). Thus, the dual jurisdictional requirements

collapse into a single inquiry as to whether Defendants have "certain minimum contacts" with

the forum, such that "maintenance of the suit does not offend 'traditional notions of fair play and

substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted).

---

[1]      South Carolina's long-arm statute provides that :

  A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's:

    (1) transacting any business in this State;
    (2) contracting to supply services or things in the State;
    (3) commission of a tortious act in whole or in part in this State;
    (4) causing tortious injury or death in this State by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;
    (5) having an interest in, using, or possessing real property in this State;
    (6) contracting to insure any person, property, or risk located within this State at the time of contracting;
    (7) entry into a contract to be performed in whole or in part by either party in this State;or
    (8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

  S.C. CODE 36-2-803(a).

4

(a) **<u>Minimum Contacts:</u>**

The analytical framework for determining whether minimum contacts exist differs according to which species of personal jurisdiction—general or specific—is alleged. *See generally ESAB Group v. Centricut*, 126 F.3d 617, 623-24 (4th Cir. 1997). When a cause of action arises out of a defendant's contacts with the forum, a court may seek to exercise specific jurisdiction over that defendant if it purposefully directs activities toward the forum state and the litigation results from alleged injuries that arise out of or relate to those activities. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). However, when the cause of action does not arise out of the defendant's contacts with the forum, general jurisdiction may be exercised upon a showing that the defendant's contacts are of a "continuous and systematic" nature. *Id.* at 416.

In this case, the Court finds that Defendants' contacts in South Carolina were neither continuous nor systematic in nature. Therefore, the Court needs only determine whether Defendants' contacts related to this case are sufficient to subject Defendants to specific jurisdiction in South Carolina. A defendant has minimum contacts with a jurisdiction if "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1990). Under this standard, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The Court is mindful that it must draw all reasonable inferences from both parties' pleadings, even if they conflict, in the Plaintiff's favor. *See, e.g., Precept Med.*

5

*Products, Inc., v. Klus,* 282 F. Supp. 2d 381, 385 (W.D.N.C. 2003) ("for the purposes of a Rule 12 (b)(2) motion, the Court will accept the Plaintiff's version of disputed facts").

In this case, Plaintiff alleges that he met with Prader and Hovdestad in South Carolina to discuss business that IBI was conducting in North Charleston. During that meeting, Plaintiff contends that the terms of the Consultation Agreement were discussed. Pl's Opp. Mem, Ex. A, Dec. of Grant Liverett at ¶ 5 ("During their visits to South Carolina, I met personally with Prader and Hovdestad and others to discuss our agreement, financing and other project details. At a dinner meeting at O-Ku restaurant on upper King Street, Prader and Hovesdad discussed the terms of my arrangement.") Plaintiff further alleges that Defendants came to Charleston, SC on several occasions in relation to the gambling boat project. *Id.* at ¶ 8-10.

Defendants maintain that the Complaint fails to allege jurisdictional facts sufficient to subject Prader and Hovdestad to personal jurisdiction in South Carolina. Specifically, Defendants claim that there are no allegations that Prader and Hovdestad committed any tortious conduct in South Carolina. However, the Complaint as well as Liverett's affidavit, allege that Prader and Hovdestad both traveled to South Carolina, met with Plaintiff to discuss the casino boat project and the terms of the alleged Consultation Agreement, and failed to pay Plaintiff pursuant to the Consultation Agreement after funding was secured. These allegations are the factual basis for Plaintiff's causes of action for Fraud/Misrepresentation, Constructive Fraud, and Negligent Misrepresentation. Because these allegations place Prader and Hovdestad in South Carolina, negotiating an agreement to be performed in South Carolina, they are sufficient to establish minimum contacts. Therefore, Plaintiff has made a prima facie showing that

6

Defendants' conduct and connection with South Carolina are such that they should have reasonably anticipated being haled into court in South Carolina.

### (b) Fair Play and Substantial Justice

Having determined that Defendants have sufficient minimum contacts with South Carolina to allow for specific jurisdiction, the Court must next consider whether the exercise of jurisdiction in this case "comport[s] with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985). In determining whether the exercise of jurisdiction comports with fair play and substantial justice, the court evaluates the following factors:

> [ (1) ] the burden on the defendant, [ (2) ] the forum State's interest in adjudicating the dispute, [ (3) ] the plaintiff's interest in obtaining convenient and effective relief, [ (4) ] the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and [ (5) ] the shared interest of the several States in furthering fundamental substantive social policies.

*Christian Science Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209*, 217 (4th Cir.2001) (quoting *Burger King,* 471 U.S. at 477)). "More generally, [the Fourth Circuit's] reasonableness analysis is designed to ensure that jurisdictional rules are not exploited in such a way as to make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." *Id.* (quotations and citations omitted). Thus, for exercise of jurisdiction to be constitutionally reasonable the "defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen*, 444 U.S. at 297.

In this case, Defendants traveled to South Carolina for business purposes on numerous occasions, demonstrating that travel to this state is not an enormous burden. South Carolina clearly has an interest in adjudicating disputes involving harm to one of its residents when the

person resides in South Carolina and the damage is felt locally, and likewise, Plaintiff has a similar interest. Defendants came to South Carolina with the intention of doing business here and continued to travel here for that purpose. Furthermore, they made local business connections in this state in association with the same potential business transaction. Because Defendants' conduct and connection with South Carolina are such that they should have reasonably anticipated being haled into court in South Carolina, the exercise of jurisdiction in this case comports with fair play and substantial justice.

## II.  Motion to Transfer Venue under 28 U.S.C. § 1404(a)

Transfer of venue under 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). This provision "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

In order to transfer venue, it must be determined whether the proposed venue is proper. *See Selective Ins. Co. of South Carolina v. Schremmer*, 465 F.Supp.2d 524, 527 (D.S.C. 2006). In this case, as both of the individual defendants reside in New Jersey venue is proper in New Jersey. However, "[a] promotion of the interests of justice, as well as convenience to parties and witnesses, must be shown to justify a change of venue." *Gerber v. Canfield*, 315 F. Supp. 1175, 1178 (D.S.C. 1970). Factors to be considered for the interest of justice include the need for a view by a jury, the location and convenience of evidence, and the financial ability to transport

8

witnesses. *Id.* at 1179.   New Jersey may be a more convenient venue for Defendants and some of their witnesses, but "[i]n making the determination as to whether a § 1404 motion should be granted, the 'plaintiff's choice of forum should rarely be disturbed' unless 'the balance is strongly in favor of the movant.'" *Figgie Intern., Inc. v. Destileria Serralles, Inc.*, 925 F. Supp. 411, 413-14 (D.S.C 1996) (quoting *Avant v. Travelers Ins. Co.*, 668 F. Supp. 509, 510 (D.S.C.1987)).    Furthermore, "[a] court should not transfer venue merely to shift the inconvenience of litigating from one party to another, and the party seeking a transfer of venue must make a strong showing that the forum is inconvenient." *Sleepy Lagoon, Ltd. v. Tower Group, Inc.*, 809 F.Supp.2d 1300, 1305 (N.D.Okla. 2011). Though Defendants allege that access to proof would be more efficient because the documents would be located in offices closer to New Jersey, the Court finds that the proximity to documents does not necessarily impact the convenience of those documents. Furthermore, documents as a form of evidence are particularly suited for travel. Defendants also allege that witnesses would be better able to reach a New Jersey venue. However, many of the witnesses for this case will have to travel to either Charleston or New Jersey.    Transferring the case to New Jersey would serve only to "shift the inconvenience" to the Plaintiff.  Because that is not the purpose of a transfer of venue, the Court denies the Motion to Transfer.

### III.  Motion to Dismiss for Failure to State a Claim

#### (a) Legal Standard under  Fed. R. Civ. P. 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is a challenge to the legal sufficiency of a complaint." *Federal Trade Comm'n v. Innovative Mktg.*, 654 F. Supp. 2d 378, 384 (D. Md. 2009).  The Supreme Court recently held

9

that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (citation omitted).  The Supreme Court noted that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and noted that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678-79; see also *Harman v. Unisys Corp.*, 356 Fed. Appx. 638, 640 (4th Cir. 2009).   The Court added that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The Court further noted that "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679.

### (b) Illegality Defense

Defendants raise illegality as a defense.  A defense may be reached by a motion to dismiss only when "facts sufficient to rule on an affirmative defense . . . are alleged in the complaint". *See Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009) (internal quotation marks and citation omitted).

Generally, a contract that provides compensation for illegal activity is unenforceable. *See e.g. Jackson v. Bi-Lo Stores, Inc.* 437 S.E.2d 168, 170 (S.C. Ct. Apps. 1993) ("It is a well founded policy of law that no person be permitted to acquire a right of action from their own

10

unlawful act and one who participates in an unlawful act cannot recover damages for the consequence of that act. This rule applies at both law and in equity and whether the cause of action is in contract or in tort.") (citations omitted).[1]

Under both federal and South Carolina law, it is illegal for any person to operate as a broker, dealer, or broker-dealer unless he is registered as such. Specifically, under federal law, it is illegal for a broker "to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of any security . . . unless such broker or dealer is registered. . . ." 15 U.S.C. § 78o(a)(1). South Carolina law is similar. *See* S.C. CODE § 35-1-401(a) (providing that "it is unlawful for any person to transact business in this State as a broker-dealer unless the person is registered under this chapter as a broker-dealer or is exempt from registration. . . ").

Liverett admits he was not registered as a securities broker-dealer, but argues that he was not required to be in order to help secure the financing for the casino boat project because the transaction did not involve a security, but rather a commercial loan. Federal law provides that a "security" is "any note, stock, treasury stock, bond, debenture, [or] evidence of indebtedness,

---

[1] In the securities context, Congress has specifically provided that contracts violating federal securities laws are unenforceable. *See* 15 U.S.C. § 78cc(b). That code section provides:

> Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract . . . heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract….

15 U.S.C. § 78cc(b).

transferable share, investment contract. . . ."  15 U.S.C. 78(c)(a)(10).  Like the federal statute,

South Carolina law provides that a security includes "any note, stock, bond, debenture, [or]

evidence of indebtedness . . . transferable share, investment contract. . . . S.C. CODE § 35-1-

102(29).  It is well established that not every loan transaction necessarily involves a security.

*See eg. Reves v. Ernst & Young*, 494 U.S. 56, 62 (1990) ("Unlike 'stock,' . . . 'note' may now be

viewed as a relatively broad term that encompasses instruments with widely varying

characteristics, depending on whether issued in a consumer context, as commercial paper, or in

some other investment context.") (citations omitted); *South Carolina Nat. Bank v. Darmstadter*,

622 F.Supp. 226, 230 (D.S.C. 1985) (holding that "[t]he facts of this case establish that the loan

transactions did not constitute or involve securities," where the notes issued were for a fixed

sum, fixed rate of interest, fixed due date, and there was no reliance on managerial abilities of

others or on success of investment for repayment).

The Complaint includes the following allegations regarding the transactions Liverett

allegedly acted as a consultant in identifying:

> 14. As a direct and proximate result of the consultation services of the Plaintiff,
> IBI obtained a $3.3 million loan from Platinum Partner Value Arbitrage, L.P. to
> serve as bridge financing until the closing of full funding.

> 15.  IBI Obtained the Platinum loan.

> 16. As a direct and proximate result of the consultation services of the Plaintiff,
> IBI has entered [into] an agreement with Malom Group AG, pursuant to which
> Malom has agreed to provide $12.5 million in funding for the project.

First Am. Compl. ¶¶ 14-16.  The details of the transactions will determine if the transaction

involved a security, but the facts as stated in the Complaint are insufficient to determine whether

these transactions involved securities or not.  Therefore, because the facts needed to rule on the affirmative defense are not available in the Complaint, the Court denies the Motion to Dismiss.

### (c) **Civil Conspiracy Claim**

Defendants also move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Plaintiff's Civil Conspiracy cause of action.  "Civil conspiracy consists of three elements: (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, (3) which causes him special damage." *Vaught v. Waites*, 387 S.E.2d 91, 95 (S.C. Ct. App. 1989).  Plaintiff has alleged that Prader, Hovdestad, and IBI joined together in a scheme to mislead him, to take the benefits of his labor without compensating him, and to harm his reputation in the business community.  Prader and Hovdestad are officers of IBI, and Plaintiff has failed to allege facts that either of them acted outside of their normal corporate duties or had any independent stake in achieving the objective of the alleged conspiracy.  Therefore, Plaintiff's civil conspiracy claim fails under the intracorporate conspiracy doctrine which provides that "no conspiracy can exist if the conduct challenged is a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment."  *McMillan v. Oconee Memorial Hosp., Inc.,* 626 S.E.2d 884, 887 (S.C. 2006).

In opposing the Motion to Dismiss, Plaintiff states that "the core of the conspiracy claim is an agreement between the defendants and the leader of Malom to deprive the Plaintiff of his rightful commissions." Pl.'s Opp. Mem., at 8.  According to Plaintiff, "[t]he fact that the Complaint does not mention Malom's participation in the civil conspiracy is not grounds to dismiss the case . . . [because] [t]here is no need to join every party to a conspiracy in order to state a claim for conspiracy because the Plaintiff can choose whether or not to sue all liable

13

parties." *Id.*[2]  Plaintiff is correct that he is allowed to decide who he would like to sue. However, he must allege sufficient facts to state a claim.  He has only alleged facts relating to an alleged conspiracy between Prader, Hovdestad, and IBI and if he were able to prove that allegation, the intracorporate conspiracy doctrine would preclude his claim.  Therefore, he has failed to state a claim upon which relief could be grant and that cause of action is hereby dismissed.

## CONCLUSION

Therefore, it is **ORDERED**, for the forgoing reasons, that Defendants' 12(b)(2) Motion to Dismiss is **DENIED**, it is **ORDERED** that Defendants' Motion to Transfer Venue is **DENIED**, and it is **ORDERED** that Defendants' 12(b)(6) Motion to Dismiss the first five causes of action is **DENIED**.  Finally, it is **ORDERED** that Defendants' 12(b)(6) Motion to Dismiss the civil conspiracy claim is **GRANTED**.

PATRICK MICHAEL DUFFY
United States District Judge

**August 9, 2012**
**Charleston, SC**

---

[2] Plaintiff states that "[i]n as much as the Complaint fails to state a cause of action for conspiracy, the Plaintiff moves for leave to amend the complaint to add the necessary allegations to demonstrate that the conspiracy goes beyond the actions of the corporation and its officers, pursuant to Rule 15 FRCP." Pl.'s Opp. Mem., at 8-9.  The Court declines to grant leave to amend without a proposed Amended Complaint and without Defendants having an opportunity to respond to the proposed amendments.

14